U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

DEC 3 0 2008

LAWRENCE K. BAERMAN, CLERK
ALBANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

WESTERN SUPREME BUDDHA ASSOCIATION INC., WESTERN SUPREME BUDDHA TEMPLE A/K/A WESTERN SUPREME BUDDHA TEMPLE, INC., LUCAS Z. WANG A/K/A MASTER ZIGUANG SHANG SHI A/K/A HOLY ZIGUANG SHANG SHI, CHUN YEE J. WONG A/K/A JENNIE WONG, HSIAOPEI TAN A/K/A BETTY TAN, MIALANA MAK, SUET LEE CHAN A/K/A NAKIE CHAN, YIN YEE LO A/K/A DEVI LO, and YIK CHENG A/K/A AEOLIAN CHENG

Docket No.: *1:'08-CV-1374 (TJM/DRH)*

**COMPLAINT**

**JURY TRIAL DEMANDED**

*Plaintiffs,*

*-against-*

OASIS WORLD PEACE AND HEALTH FOUNDATION, OASIS CAPITALS INC., CHANGLIN QIN A/K/A CHARLES QIN, MIN ZOU A/K/A HELEN ZOU and LAN WU A/K/A HELENA WU.

*Defendants.*

-----------------------------------------------------------------X

Plaintiffs, WESTERN SUPREME BUDDHA ASSOCIATION INC., WESTERN SUPREME BUDDHA TEMPLE A/K/A WESTERN SUPREME BUDDHA TEMPLE, INC., LUCAS Z. WANG A/K/A MASTER ZIGUANG SHANG SHI A/K/A HOLY ZIGUANG SHANG SHI, CHUN YEE J. WONG A/K/A JENNIE WONG, HSIAOPEI TAN A/K/A BETTY TAN, MIALANA MAK, SUET LEE CHAN A/K/A NAKIE CHAN, YIN YEE LO A/K/A DEVI LO, and YIK CHENG A/K/A AEOLIAN CHENG (collectively, the "Plaintiffs"), complaining of defendants, OASIS WORLD PEACE AND HEALTH FOUNDATION, OASIS CAPITALS, INC., CHANGLIN QIN A/K/A CHARLES QIN, MIN ZOU A/K/A HELEN ZOU and LAN WU A/K/A HELENA WU (collectively, "Defendants"), alleges, upon information and belief, the following:

## NATURE OF THIS ACTION

1.     This is an action arising out of Defendants' improper acts and conduct that were likely to deceive or confuse the purchasing public and improperly trade upon Plaintiffs' reputation, both as to the source, origin, sponsorship, and approval of the services provided and as to the affiliation, connection, or association of Defendants with plaintiff Lucas Z. Wang a/k/a Master Ziguang Shang Shi, Western Supreme Buddha Association, Inc. and/or Western Supreme Buddha Temple a/k/a Western Supreme Buddha Temple, Inc.

2.     In that regard, Plaintiffs allege that Defendants' improper acts and omissions constitute acts of unfair competition, false designation of origin and false representation of affiliation in violation of Section 43(a) of the Lanham Act (codified as 15 U.S.C.A. § 1125).

3.     Plaintiffs also hereby interpose pendent state claims against Defendants for invasion of the right of privacy pursuant to New York Civil Rights Law § 51, trademark infringement pursuant to New York General Business Law § 360-k, common law trademark infringement, common law misappropriation, common law palming off, conversion and defamation.

4.     As a result of Defendants' acts, Plaintiffs seek a preliminary and permanent injunction restraining and enjoining the Defendants from engaging in further unlawful acts.

## Claim

5.     In addition, Plaintiffs are seeking damages as allowed by statute, compensatory damages, costs and attorney's fees associated with the within action.

A.     Special damages for the reputation losses of the plaintiffs caused by the defendants in the amount of no less than $500,000 for each of the plaintiffs against the defendants jointly and severally;

B.     Aggravated, punitive damages in the amount of no less than $3,500,000 for the plaintiffs Western Supreme Buddha Association and Master Ziguang Shang Shi, against the defendants jointly and severally;

C.     Costs of this action on a substantial indemnity scale;

D.     Such further and other relief as the counsel may request and the court may deem just.

## CONTACTS OF PARTIES

Plaintiff: Western Supreme Buddha Association, Inc.
Address: 174 Shrine Road, Fultonville, New York 12072.
Telephone: 518 - 853 1873

Plaintiff: Western Supreme Buddha Temple a/k/a Western Supreme Buddha Temple, Inc.
Address: 174 Shrine Road, Fultonville, New York 12072.

Plaintiff: Master Lucas Z. Wang a/k/a Master Ziguang Shang Shi
Address: 174 Shrine Road, Fultonville, New York 12072.

Plaintiff: Chun Yee Wong a/k/a Jennie Wong
Address: 174 Shrine Road, Fultonville, New York 12072.
Telephone: 518 - 853 1873 and/or 518 – 421 3789

Plaintiff: Hsiaopei Tan a/k/a Betty Tan
Address: 174 Shrine Road, Fultonville, New York 12072.
Telephone: 518 - 853 1873 and/or 518 – 269 8658

Plaintiff: Mialana Mak
Address: 174 Shrine Road, Fultonville, New York 12072.
Telephone: 518 - 853 1873 and/or 518 – 301 4178

Plaintiff: Suet Lee Chan a/k/a Nakie Chan
Address: 174 Shrine Road, Fultonville, New York 12072.
Telephone: 518 - 853 1873 and/or 518 – 258 0209

Plaintiff: Yin Yee Lo a/k/a Devi Lo
Address: 174 Shrine Road, Fultonville, New York 12072.
Telephone: 518 - 853 1873 and/or 518 – 522 0674

Plaintiff: Yik Cheng a/k/a Aeolian Cheng
Address: 174 Shrine Road, Fultonville, New York 12072.

Defendant: Oasis World Peace and Health Foundation
Address: 7010 Warden Avenue, Suite 21, Markham, Ontario, Canada, L3R 5Y3
Telephone: 416 – 855 6446

Defendant: Oasis Capitals, Inc.
Address: 7010 Warden Avenue, Suite 21, Markham, Ontario, Canada, L3R 5Y3

Defendant: Changlin Qin a/k/a Charles Qin
Address: 129 Hollywood Avenue, Toronto, Ontario, M2N 3K2, Canada
         and/or 107 Glentworth Road, North York, Ontario, M2J 2E7, Canada.
Telephone: 647 – 290 6998 (Canada), 518 – 763 3829 (U.S.A.)

Defendant: Min Zou a/k/a Helen Zou
Address: 7010 Warden Avenue, Suite 21, Markham, Ontario, Canada, L3R 5Y3
Telephone: 416 – 855 6446, 416 – 859 9602, 416 – 987 4461, 416 – 358 6627 (Canada)

Defendant: Lan Wu a/k/a Helena Wu
Address: 97 Spire Hillway, Toronto, Ontario, M2H 3A5, Canada.
         And/or Redstar Financial, 80 Acadia Ave., Suite 105, Markham, Canada, ON L3R 9V1
Telephone: 647 – 284 4435, 416 – 493 2949 (Canada)

3

## JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1).

7.     This Court has supplemental jurisdiction over the causes of action under New York state law pursuant to 28 U.S.C § 1367(a) insofar as these causes of action are so related to claims within such original jurisdiction that they form part of the same case or controversy and/or are derived from a nucleus of operative fact common to all causes of action and that, regardless of their state or federal character, the causes of action contained herein are such that Plaintiffs would ordinarily be expected to try them all in one judicial proceeding.

8.     The Court has long-arm jurisdiction over Defendants pursuant to New York's long arm statute, CPLR § 302(a)(2), because Defendants committed tortious acts within the State of New York.

9.     In addition, the Court has long-arm jurisdiction over Defendants pursuant to CPLR § 302(a)(3) because Defendants committed tortuous acts outside of the State of New York that has caused harm to the Plaintiffs in the State of New York.

10.    Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(d) as all of the Defendants are residents and/or citizens of Canada.

## PARTIES

11.    Plaintiff Western Supreme Buddha Association, Inc. (hereinafter referred to as "Association") was and still is a corporation organized and existing under the laws of the State of New York with a principal place of business located at 174 Shrine Road, Fultonville, New York 12072.

12.    Plaintiff Association is a tax exempt not-for-profit corporation pursuant to Section 501(c)(3) of the United States Internal Revenue Code.

13.    Plaintiff Association was established for the purpose of practicing and teaching Guang Huan Mi Zong ("GHMZ") in North America.  GHMZ is a sect of Buddhism originating founded by Master Ziguang Shang Shi during the 1970s.

14.    The headquarters for GHMZ in the United States is located at 174 Shrine Road, Fultonville, New York 12072.  GHMZ members refer to the headquarters as the Western Shrine.

15.    The places of worship associated with GHMZ are referred to as Temple of Kshitigarbha Bodhisattva a/k/a Temple of the God of Earth ("Temple of the God of Earth").

16.    In the United States, there is one Temple of the God of Earth and that is located at the GHMZ United States headquarters located at 174 Shrine Road, Fultonville, New York 12072.

17.    Plaintiff Western Supreme Buddha Temple a/k/a Western Supreme Buddha Temple, Inc. (hereinafter referred to as "Temple") is a not-for-profit company and has a principal place of business located at 174 Shrine Road, Fultonville, New York 12072.  Plaintiffs Association and Temple are collectively referred to hereinafter as "Western Supreme."

4

18.     Prior to the formation of plaintiff Association, plaintiff Temple was established for the purpose of practicing and teaching GHMZ in the United States.

19.     Plaintiff Master Lucas Z. Wang a/k/a Master Ziguang Shang Shi a/k/a Holy Ziguang Shang Shi ("Master") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

20.     Master is the founder of GHMZ. He is also a preacher of GHMZ philosophy.

21.     Plaintiff Chun Yee J. Wong a/k/a Jennie Wong ("Wong") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

22.     Plaintiff Wong has been a member of GHMZ for over ten (10) years.

23.     Since 1999, Plaintiff Wong is a preacher of GHMZ.

24.     Plaintiff Hsiaopei Tan a/k/a Betty Tan ("Tan") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

25.     Plaintiff Tan is a preacher of GHMZ.

26.     Plaintiff Mialana Mak ("Mak") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

27.     Plaintiff Mak is a preacher of GHMZ.

28.     Plaintiff Suet Lee Chan a/k/a Nakie Chan ("Chan") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

29.     Plaintiff Chan is a preacher of GHMZ.

30.     Plaintiff Yin Yee Lo a/k/a Devi Lo ("Lo") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

31.     Plaintiff Lo is a preacher of GHMZ.

32.     Plaintiff Yik Cheng a/k/a Aeolian Cheng ("Cheng") is an individual and resident of the State of New York with a principal residential address located at 174 Shrine Road, Fultonville, New York 12072.

33.     Plaintiff Cheng is a preacher of GHMZ.

34.     Upon information and belief, defendant Oasis World Peace and Health Foundation ("Oasis World") is a not-for-profit corporation incorporated under the laws of the Province of Ontario, Canada and has a principal business address located at 7010 Warden Avenue, Suite 21, Markham, Ontario, L3R 5Y3.

35.     At all times hereinafter mentioned and upon information and belief, Oasis World has transacted business within the State of New York.

36.     At all times hereinafter mentioned and upon information and belief, Oasis World has regularly done or solicited business, or engaged in a course of conduct, or derived revenue from goods used or consumed or services rendered in the State of New York.

37.    At all times hereinafter mentioned and upon information and belief, Oasis World has derived revenue from interstate commerce.

38.    Oasis World expected or should have reasonably expected that its actions would have consequences in the State of New York.

39.    Upon information and belief, defendant Oasis Capitals, Inc. ("Oasis Capitals") is a corporation incorporated under the laws of the Province of Ontario, Canada and has a principal business address located at 7010 Warden Avenue, Suite 21, Markham, Ontario, L3R 5Y3.

40.    At all times hereinafter mentioned and upon information and belief, Oasis Capitals has transacted business within the State of New York.

41.    At all times hereinafter mentioned and upon information and belief, Oasis Capitals has regularly done or solicited business, or engaged in a course of conduct, or derived revenue from goods used or consumed or services rendered in the State of New York.

42.    At all times hereinafter mentioned and upon information and belief, Oasis Capitals has derived revenue from interstate commerce.

43.    Oasis Capitals expected or should have reasonably expected that its actions would have consequences in the State of New York.

44.    Defendant Changlin Qin a/k/a Charles Qin ("Qin") is an individual with a last known residential address located at 129 Hollywood Avenue, Toronto, Ontario, M2N 3K2, Canada and/or 107 Glentworth Road, North York, Ontario, M2J 2E7, Canada.

45.    Defendant Qin is a former member of GHMZ.  In addition, Defendant Qin was ordained as a disciple of GHMZ.

46.    In addition, Defendant Qin attempted to become a monk and/or preacher of GHMZ at one time.

47.    Defendant Qin was dismissed from GHMZ due to serious breach of law because of his involvement in the rape and fraud in 2007 – 2008.

48.    In addition, defendant Qin is and/or was the director and/or officer of defendant Oasis World.

49.    Defendant Qin is and/or was the director and/or officer of defendant Oasis Capitals.

50.    Defendant Min Zou a/k/a Helen Zou ("Zou") is an individual with a last known residential and/or business address located at 7010 Warden Avenue, Suite 21, Markham, Ontario, L3R 5Y3, Canada.

51.    Defendant Zou is a former member of GHMZ.  In addition, Defendant Zou was also a former converted disciple of GHMZ meaning that she made a religious oath to observe the teachings of GHMZ.  Defendant Zou was also attempting to become a nun/preacher of GHMZ.

52.    Defendant Zou was dismissed from GHMZ due to serious breach of law because of his involvement in the rape and fraud in 2007 – 2008.

53.    In addition, Defendant Zou is and/or was a director and/or officer of defendant Oasis World.

54.    Defendant Zou is and/or was a director and/or officer of defendant Oasis Capitals.

55.     Defendant Lan Wu a/k/a Helena Wu ("Wu") is an individual with a last known residential address located at 97 Spire Hillway, Toronto, Ontario, M2H 3A5, Canada       and/or Redstar Financial, 80 Acadia Ave., Suite 105, Markham, Canada, ON L3R 9V1.

56.     Defendant Wu is a member of GHMZ.

57.     In addition, defendant Wu is and/or was the director and/or officer of defendant Oasis World.

## STATEMENT OF FACTS

### Background

58.     In 1994, plaintiff Master met Defendant Zou for the first time in China.

59.     At that time, Defendant Zou approached plaintiff Master about providing her with spiritual guidance because she was undergoing emotional difficulties as a result of personal issues in her life.

60.     Plaintiff Master applied the teachings of GHMZ to help defendant Zou overcome her emotional difficulties.

61.     In 2000, Plaintiff Master came to the United States to convey the teachings of GHMZ for the health of all the people.

62.     Plaintiff Master once wrote to President Bush to promote World Peace and the speedy and instant way that led to a "Healthier America".

63.     On or about 2004, plaintiff Master met Defendant Zou again. At this time, Defendant Zou became a formal member of GHMZ through an inauguration ceremony. Now she is dismissed.

64.     At that time, Defendant Zou was in a romantic relationship with Defendant Qin.

65.     In 2007, Defendant Qin also became a member of GHMZ. Now he is dismissed.

66.     After the internal investigation was completed in August 2008, the committee concluded that:

> A.     Defendant Qin likely committed the acts complained of by the victim member Ge.
>
> B.     Likewise, the committee also concluded that Defendant Zou was likely present during the sexual assault and further failed to do anything to prevent the same.

67.     Furthermore and in the process of investigating the allegations relating to the sexual assault of a GHMZ member, Plaintiffs discovered that Defendants had engaged in other serious acts as set forth in more detail below.

68.     As a direct result of Defendants' serious acts including without limitation, the sexual assault on a GHMZ member, plaintiff Association terminated Defendants' membership with GHMZ in July 2008 and announced publicly in August, to prevent further harm caused to the other members.

### Defendants Misappropriated Funds Belonging to Plaintiff Western Supreme

69.     One aspect of the GHMZ philosophy is the promotion of health and practice to facilitate spiritual and physical well-being.  As such, plaintiff Western Supreme offers Dharma Health Enhancement courses to people in society.  More specifically, plaintiff Western Supreme trains some of its members to provide instruction in the Dharma Health Enhancement courses.

70.     In that regard, GHMZ trained Defendant Zou to provide instruction in the Dharma Health Enhancement courses ("Health Class" or "Health Classes") to people in society.

71.     The fees generated from these Health Classes were to be remitted to plaintiff Western Supreme.

72.     From September 23, 2005 to April 30, 2006, Defendant Zou held additional Health Classes on behalf of plaintiff Temple.

73.     These Health Classes generated proceeds in the amount of Three Thousand Nine Hundred and Forty Dollars ($3,940.00), not including the donation from the members.

74.     In addition, defendant Zou, on behalf of plaintiff Temple, held Health Classes from December 26 to December 28, 2005, which generated an additional Thirty Four Dollars ($34.00).

75.     Defendant Zou failed to remit the monies generated from the aforementioned Health Classes to plaintiff Temple.  These monies totaled Three Thousand Nine Hundred and Seventy Four Dollars ($3,974.00).

76.     Likewise, from January 2, 2007 to April 26, 2007, Defendant Zou held four (4) Health Classes in Toronto on behalf of plaintiff Association

77.     In total, three hundred fifty eight (358) people attended the Health Classes during this time.

78.     In that regard, the Health Classes generated total aggregate revenue of Eight Thousand Two Hundred and Thirteen Dollars and Thirty Four Cents ($8,213.34) to plaintiff Association.

79.     Furthermore and during the time period of September 27, 2007 to June 6, 2008, defendant Zou, on behalf of plaintiff Association, solicited donations from GHMZ members for the construction of the Temple of the God of Earth in Canada.

80.     The total amount of these donations equaled approximately Six Thousand Two Hundred Ninety Three Dollars and Sixty Cents ($6,293.60). The important information of the amount only known by the defendants Zou, Qin and Wu.

81.     Defendant Zou never remitted any of these donations to plaintiff Association.

82.     In addition, the plaintiffs Association and Master sponsored in part a Dharma Convention in Toronto, Canada from June 8 to June 12, 2008.

83.     To attend the Dharma Convention, the attendees had the option of purchasing admission tickets in the amount of approximately thirty nine dollars ($39.00) (CAD 40), one hundred seventy five dollars ($175.00) (CAD 180) and two hundred and ninety three ($293.00) (CAD 300).

84.     The proceeds from the tickets were to be donated to an earthquake relief fund in Sichuan, China. This was announced by the plaintiff Master in the Press Conference and the

Dharma Convention in June 2008. Approximately, three hundred (300) people attended the Dharma Convention.

85.     Defendants Qin and Zou sold a majority of the tickets to the Dharma Convention prior to the convention.

86.     In addition, defendants Qin, Zou and Wu, along with other nuns and/or preachers of plaintiff Association, sold admission tickets at the door and at the time of the Dharma Convention. After the other nuns collected the admissions fees, they remitted the monies to the representatives defendants Zou and Wu.

87.     Defendants Qin, Helen and Wu failed to provide to plaintiffs Association and/or any of the proceeds from the admission tickets that they sold.

88.     Upon information and belief, the amount of monies that Defendants Qin, Zou and Wu failed to remit to plaintiffs Association and/or Master in regard to the admission tickets was the approximate sum of Sixty Seven Thousand Four Hundred and Nine Dollars and Fifty Five Cents ($67,409.55).

89.     In addition and during the Dharma Convention, plaintiffs Association and/or Master provided Health Classes to the attendees of the convention for an additional cost.

90.     Although Defendants Qin and Zou did not teach these Health Classes, they were responsible for collecting the fees related to attending these health classes.

91.     Approximately forty two (42) individuals paid fees for the Health Classes provided during the Dharma Convention.

92.     In that regard, the proceeds generated from these classes amounted to Twelve Thousand Three Hundred and Nine Dollars and Fifty Seven Cents ($12,309.57).

93.     Again, defendants Zou and Qin failed to remit any of these proceeds to plaintiffs Association and/or Master.

94.     Upon information and belief, Defendants misappropriated other donations that they solicited on behalf of plaintiffs Association, Temple and Master including a donation in the amount of Ten Thousand Dollars ($10,000.00) that was provided by at least one individual.

95.     Accordingly, in the aggregate, Defendants misappropriated monies belonging to plaintiffs Association, Temple and/or Master in an amount not less than One Hundred and Eight Thousand Two Hundred Dollars and Six Cents ($108,200.06).

96.     Defendants Zou and Qin were acting individually, jointly and/or in their capacity as officers and/or directors of defendant Oasis Capitals when they misappropriated the monies from plaintiff Western Supreme.

97.     In addition, defendants Zou, Qin and Wu were acting, individually, jointly and/or in their capacity as officers and/or directors of defendant Oasis World.

98.     Upon information and belief, Defendants utilized the misappropriated monies, in whole or in part, to, inter alia, purchase real property in Canada.

99.     Upon information and belief, Defendant Zou utilized the monies rightfully belonging to plaintiffs Association, Temple and/or Master to, inter alia, purchase residential property located at 23 Trinity Place, Amsterdam, New York.

## Defendants Improperly Utilized Plaintiff Master's Name, Photograph and Marks and Plaintiff Temple's Logo

100.    Plaintiffs further discovered that Defendants utilized and/or continue to utilize Master's name, picture and likeness without his consent in at least two separate advertisements for the purpose of soliciting monies from GHMZ members.

101.    Similarly, plaintiff Master further learned that Defendants utilized and/or continue to utilize Master's marks "Guang Huan Mi Zong" and/or "GHMZ" without his consent in advertisements and for the purpose of soliciting monies from GHMZ members.

102.    In addition, plaintiff Temple learned that Defendants utilized and/or continue to utilize its trademark, the GHMZ logo.

103.    In that regard and at all times hereinafter mentioned, plaintiff Temple was and still is the owner of a trademark registration of the GHMZ logo ("Logo").

104.    This trademark registration (registered on July 13, 2007) was duly and lawfully issued by the Office of the Secretary for the State of New York and remains in full force and effect to this day.

105.    Specifically and on or about September 2005, defendant Oasis World published the first volume of a periodical and/or book titled "Peace & Health."

106.    On or about July 2006, defendant Oasis World published a second volume of the "Peace & Health" periodical and/or book in order to generate funds from the public.

107.    Likewise, on or about June 2008, defendant Oasis World published a third volume of the "Peace & Health" periodical and/or book.

108.    The first, second and third volumes of "Peace & Health" discussed ways to promote world peace, promote health and implement disease treatment programs through the use of GHMZ's teachings and practices.

109.    Defendant Oasis World published the first, second and third volumes of "Peace & Health" for purposes of generating funds from the public.

110.    All three (3) volumes of "Peace and Health" utilized plaintiff Master's name and his picture.

111.    However, at no time did plaintiff Master authorize the use of his name and picture by defendant Oasis World in connection with these periodicals.

112.    In addition, the first, second and third volumes designate the author of the book as the "GHMZ Oasis World Peace and Health Foundation." In that regard, all three volumes also refer to plaintiff Master's marks, "Guang Huan Mi Zong" and/or "GHMZ", throughout.

113.    In that regard, plaintiff Master did not authorize defendant Oasis World to utilize his marks, "Guang Huan Mi Zong" and/or "GHMZ" in connection with these periodicals.

114.    Furthermore, the first, second and third volumes of "Peace and Health" utilize plaintiff Temple's trademark of the GHMZ Logo.

115.    By utilizing plaintiff Master's name, picture and likeness and the mark "Guang Huan Mi Zong" as well as plaintiff Temple's mark of the GHMZ Logo in connection with first, second and third volumes of "Peace & Health," defendants intended to deceive and/or mislead

the public that plaintiffs Master, Association and/or Temple sponsored, endorsed or was otherwise connected to the books and/or periodicals and the information contained therein.

116.     In addition and on or about April 21, 2007, Defendants caused an advertisement to be published in Chinese in the newspaper, World Journal, offering Holy Mountain Pilgrim and Conversion Health Dharma classes to the public.

117.     The April 21, 2007 advertisement provides that the Conversion Health Dharma Class will purify the minds and bodies of those who go to the Western Shrine as well as to serve as a preparation class for those who will be converted at the Western Shrine.

118.     Furthermore, the April 21, 2007 advertisement states that all proceeds for the health classes will be remitted to defendant Oasis World for the construction of a Temple of the God of Earth in Canada.

119.     The April 21, 2007 advertisement utilizes plaintiff Master's name and contains an actual photograph of plaintiff Master.

120.     The April 21, 2007 advertisement also utilizes Master's mark "Guang Huan Mi Zong."

121.     The April 21, 2007 advertisement also utilizes plaintiff Temple's trademark of the GHMZ logo.

122.     By utilizing plaintiff Master's name, picture and likeness and his mark "Guang Huan Mi Zong" as well as plaintiff Temple's mark of the GHMZ Logo in connection with the April 21, 2007 advertisement, Defendants intended to deceive and/or mislead the public that plaintiffs Master, Association and/or Temple sponsored, endorsed or was otherwise connected to the health classes being offered therein.

123.     At no time did plaintiff Master consent or authorize Defendants to utilize his name or photograph in any capacity including, without limitation, with respect to the April 21, 2007 advertisement.

124.     In addition, at no time did plaintiff Master consent or authorize Defendants to utilize his mark "Guang Huan Mi Zong" in any capacity including, without limitation, with respect to the April 21, 2007 advertisement.

125.     Furthermore at no time did plaintiff Temple consent or authorize Defendants to utilize its mark of the GHMZ Logo in any capacity including, without limitation, with respect to the April 21, 2007 advertisement.

126.     In addition and on or about April and/or May 2008, Defendants generated additional advertising pamphlets offering Conversion Dharma Health classes. The monies received for attending such classes were to be used to construct a Temple of the God of Earth in Canada.

127.     The April and/or May 2008 pamphlet utilized plaintiff Master's name and his mark "Guang Huan Mi Zong."

128.     The April and/or May 2008 pamphlet utilized plaintiff Temple's mark of the GHMZ Logo.

129.   In addition, the April and/or May 2008 pamphlet further stated that plaintiff Master was sending his disciples, plaintiffs Wong and Tan, to teach the Conversion Dharma Health classes.

130.   At no time did plaintiff Master consent or authorize Defendants to utilize his name in any capacity including, without limitation, in connection with the April and/or May 2008 pamphlets.

131.   At no time did plaintiff Temple consent or authorize Defendants to utilize its mark in any capacity including, without limitation, in connection with the April and/or May 2008 pamphlets.

132.   By utilizing plaintiff Master's name and plaintiff Temple's mark, Defendants intended to deceive and/or mislead the public that plaintiffs Master, Association and/or Temple sponsored, endorsed and/or was otherwise connected to the Conversion Dharma Health classes.

133.   In addition, at no time did plaintiffs Wong and Tan consent or authorize Defendants to utilize their names in any capacity including, without limitation, in connection with the April and/or May 2008 pamphlets.

134.   In fact, plaintiffs Wong and Tan were never asked and/or never agreed to lead the Conversion Dharma Health classes advertised in the April and/or May 2008 pamphlets.

135.   Upon information and belief, Defendants utilized plaintiffs Wong and Tan's names in connection with the April and/or May 2008 pamphlets to attract more people to attend the Conversion Dharma Health classes.

## Defendants Made Defamatory Statements About Plaintiffs

### Defamatory Statements Made About Plaintiff Master

136.   In addition and on or about August 19, 2008, Defendant Zou stated that plaintiff Master was a "fake one" and a "deceiver" and the real one would be coming soon. Defendant Zou made these statements in the presence of other GHMZ members.

137.   Defendant Zou's false statements about plaintiff Master impugned plaintiff Master in his normal business, trade or profession as the founder and religious leader of GHMZ. Accordingly, it constituted defamation per se.

### Defamatory Statements Made About Plaintiff GHMZ

138.   On or about August 21, 2008, Defendant Zou called the GHMZ religion an "evil cult" and "religious scam."

139.   Plaintiffs Lo, Chan and Cheng were present at the time that Defendant Zou made these statements.

140.   Defendant Zou's statements about GHMZ injured it in its business, trade or profession as a Buddhism sect. Accordingly, it constituted defamation per se.

### Defamatory Statements Made About Plaintiff Wong

141.   In February 2008 and in Boston, Massachusetts, Defendant Zou stated to a member Iris that plaintiff Wong had misappropriated monies belonging to GHMZ.

142.   In addition and on or about September 1, 2008, Defendant Zou came to Plaintiff Association's premises. Because defendant Zou's membership with GHMZ had been terminated and dismissed through the notice, plaintiff Wong contacted the police.

143.   In front of the police, Defendant Zou stated that plaintiff Wong was a "fake nun," "fraud" and "fake."

144.   In front of the police, Defendant Zou further called GHMZ an "evil cult" and involved in "religious scam."

145.   Defendant Zou made such statements in both English and Mandarin to create confusion to the police.

146.   In addition and shortly before that, Defendant Zou went to visit Hong Kong. At that time, she told an individual by the name of Rui Xiao that plaintiff Wong had misappropriated and/or was misappropriating monies belonging to GHMZ in the amount of One Hundred Thousand Dollars ($100,000.00).

147.   Defendant Zou's statements about plaintiff Wong made her depressed for a long time and had suicidal tendency to show her ignorance. They injured her in her business, trade or profession as a preacher of GHMZ. Accordingly, it constituted defamation per se.

Defamatory Statements Made About Plaintiff Tan

148.   On many separate occasions from January to May 2008, Defendant Zou stated that plaintiff Tan was "sinister", "cancer", "tumor", had "evil karma" and "evil luck." These statements were made in the presence of other GHMZ members and on occasion at the Temple of the God of Earth in Toronto, Canada.

149.   In addition and in August 2008, Defendant Zou stated that plaintiff Tan was a "fake nun" and had "evil karma". These statements were made in the presence of other GHMZ members and on occasion at the Temple of the God of Earth in Toronto, Canada.

150.   Defendant Zou's statements about plaintiff Tan injured her in her business, trade or profession as a preacher of GHMZ. Accordingly, it constituted defamation per se.

Defamatory Statements Made About Plaintiff Mak

151.   On or about August 19, 2008, Defendant Zou called plaintiff Mak crazy.

152.   Plaintiffs Wong, Chan and Tan were present at the time that Defendant Zou made these statements.

153.   Defendant Zou's statements about plaintiff Mak injured her in her business, trade or profession as a preacher of GHMZ. Accordingly, it constituted defamation per se.

Defamatory Statements Made About Plaintiff Chan

154.   On or about January 2008, Defendant Zou called plaintiff Chan a homosexual in front of other GHMZ members in Boston, Massachusetts.

155.   Defendant Zou's statements about plaintiff Chan injured her in her business, trade or profession as a preacher of GHMZ. Accordingly, it constituted defamation per se.

Defamatory Statements Made About Plaintiff Lo

156.   On or about August 21, 2008, Defendant Zou called plaintiff Lo a fake nun.

157.   Plaintiffs Wong, Chan and Cheng were present at the time that Defendant Zou made these statements.

158.   Defendant Zou's statements about plaintiff Lo injured her in her business, trade or profession as a preacher of GHMZ. Accordingly, it constituted defamation per se.

Defamatory Statements Made About Plaintiff Cheng

159.   On or about August 19, 2008, Defendant Zou called plaintiff Cheng crazy.

160.   Plaintiffs Wong, Chan and Tan were present at the time that Defendant Zou made these statements.

161.   Defendant Zou's statements about plaintiff Cheng injured her in her business, trade or profession as a preacher of GHMZ. Accordingly, it constituted defamation per se.


## AS AND FOR A FIRST CAUSE OF ACTION
### (False Designation of Origin and/or False Endorsement
### Pursuant to Lanham Act § 43(a)-15 U.S.C. § 1125(a))

162.   Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

163.   By utilizing plaintiff Master's name, his mark "Guang Huan Mi Zong" and/or an actual photograph of plaintiff Master in the April 21, 2007 advertisement and in the promotional pamphlets, Defendants made a false or misleading misrepresentation of fact — namely, by causing the public to believe that the Conversion Dharma Health classes were sponsored, endorsed or otherwise connected to plaintiff Master.

164.   In addition, by utilizing plaintiff Master's name, his mark "Guang Huan Mi Zong" and/or an actual photograph of plaintiff in the first, second and third volumes of the "Peace & Health" periodical, defendant Oasis World made a false and misleading misrepresentation of fact — namely, by causing the public to believe that the "Peace & Health" periodical and the information contained therein were sponsored, endorsed or otherwise connected to plaintiff Master.

165.   By engaging in the foregoing and without authorization from plaintiff Master, Defendants' acts and conduct are likely to deceive or confuse the purchasing public and trade upon plaintiff Master's reputation, both as to the source, origin, sponsorship, and approval of the services provided and as to the affiliation, connection or association of Defendants with plaintiff Master and constitute acts of unfair competition, false designation of origin and false representation of affiliation, all in violation of 15 U.S.C. § 1125 (a).

166.    Upon information and belief, the aforementioned actions and conduct of the Defendants were intentional, deliberate, willful and/or wanton.

167.    Defendants' intentional, deliberate, willful and/or wanton infringement of the plaintiff Master's name, actual photograph and/or his mark "Guang Huan Mi Zong" has caused and will continue to cause serious damage to plaintiff Master.

168.    Such actions and conduct were intended to cause confusion, have caused confusion, and will continue to cause confusion and cause irreparable harm for which there is no adequate remedy at law unless enjoined. Accordingly, plaintiff Master seeks and requests preliminary and permanent injunctive relief.

169.    Plaintiff Master is informed and believes, and upon that basis alleges, that Defendants have, individually and jointly, obtained gains, profits and advantages as a result of their wrongful acts in amounts not thus far determined but within the jurisdiction of this Court.

170.    In order to determine the full extent of such damages, including such profits as may be recoverable, plaintiff Master will require an accounting from each Defendant of all monies generated from their unauthorized and unlawful use, marketing, promotion, advertisement, distribution, sale of the Conversion Dharma Health classes as well as the first, second and third volume of the "Peace & Health" periodical, and fund raising by improperly utilizing plaintiff Master's name, his mark "Guang Huan Mi Zong" and an actual photograph of plaintiff Master.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Invasion of the Right of Privacy
### New York Civil Rights Law § 51)

171.    Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

172.    Civil Rights Law Section 51 prohibits the utilization for advertising purposes the name, portrait or picture of any other individual without first obtaining the person's written consent.

173.    Defendants utilized plaintiff Master's name and actual photograph in their advertisement dated April 21, 2007 with the World Journal for the purposes of soliciting the public to attend health classes.

174.    Plaintiff Master did not provide consent or otherwise authorize Defendants to utilize his name and actual photograph in any capacity including, without limitation, in connection with the April 21, 2007 advertisement.

175.    In addition, Defendants also utilized plaintiff Master's name in April and/or May 2008 in connection with promotional pamphlets advertising Conversion Dharma Health classes.

176.    Plaintiff Master did not provide consent or otherwise authorize Defendants to utilize his name in any capacity including, without limitation, in connection with the April and/or May 2008 promotional pamphlets.

177.    Similarly, Defendants also utilized plaintiffs Wong and Tan's name in the April and/or May 2008 promotional pamphlets advertising Conversion Dharma Health classes.

178.    Plaintiffs Wong and Tan did not provide consent or otherwise authorize Defendants to utilize their names in any capacity including, without limitation, in connection with the April and/or May 2008 promotional pamphlets.

179.    Furthermore, defendant Oasis World utilized plaintiff Master's name and actual photograph in connection with the first, second and third volumes of the "Peace & Health" periodical.

180.    Plaintiff Master did not provide consent or otherwise authorize defendant Oasis World to utilize his name and picture in any capacity including, without limitation, in connection with the first, second and third volumes of the "Peace & Health" periodical.

181.    Defendants' acts of utilizing plaintiff Master's name and photograph and plaintiffs Wong and Tan's names without their written consent was intentional, deliberate, willful and/or wanton and done with knowledge.

182.    As a direct and proximate result of Defendants' use of plaintiff Master's name and photograph and plaintiffs Wong and Tan's name, plaintiffs Master, Wong and Tan have been seriously damaged.

183.    In addition and pursuant to Civil Rights Law § 51, the Court should also award punitive damages as Defendants engaged in the aforementioned unlawful acts with knowledge.

184.    Defendants' intentional, deliberate, willful and/or wanton use of plaintiff Master's name and photograph and plaintiffs Wong and Tan's name without their consent has caused and will continue to cause damage to plaintiffs Master, Wong and Tan and is causing irreparable harm to plaintiffs Master, Wong and Tan for which there is no adequate remedy at law.

185.    As such plaintiffs Master, Wong and Tan are entitled, pursuant to Section 51 of the Civil Rights Law, to an injunction to prevent and restrain the further unauthorized use of Master's name, photograph and likeness and plaintiffs Wong and Tan's names both within and without the State of New York.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement)

186.    Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

187.    Plaintiff Temple is the registered owner of the mark of the GHMZ Logo.

188.    Without obtaining plaintiff Temple's consent or authorization, Defendants utilized plaintiff Temple's registered trademark in interstate commerce on at least five (5) separate occasions namely by publishing the first, second and third volumes of the "Peace & Health" periodical and publishing the April 21, 2007 advertisement in the World Journal and distributing promotional pamphlets on or about May 2008 offering Conversion Dharma Heath classes to the public.

189. Defendants' unauthorized use of plaintiff Temple's mark of the GHMZ Logo constitutes trademark infringement pursuant to New York's General Business Law § 360-k.

190. By engaging in the foregoing and without authorization from plaintiff Temple, Defendants, individually and jointly, acted with knowledge of the state registered trademark alleged herein and of the valuable goodwill of GHMZ enjoys with in connection therewith, and their acts and conduct are likely to deceive or confuse the purchasing public and trade upon plaintiff Temple's reputation, both as to the source, origin, sponsorship, and approval of the services provided and as to the affiliation, connection or association of Defendants with GHMZ.

191. Upon information and belief, the aforementioned actions and conduct of the Defendants were intentional, deliberate, willful and/or wanton and performed with knowledge and bad-faith.

192. Furthermore, Defendants utilized GHMZ's marks with the specific intent of capitalizing on its reputation and good-will.

193. Such actions and conduct were intended to cause confusion, have caused confusion, and will continue to cause confusion and cause irreparable harm for which there is no adequate remedy at law unless enjoined. Accordingly, plaintiff Temple seeks and requests preliminary and permanent injunctive relief pursuant to New York's General Business Law § 360-m.

194. Plaintiff Temple is informed and believes, and upon that basis alleges, that Defendants have, individually and jointly, obtained gains, profits and advantages as a result of their wrongful acts in amounts not thus far determined but within the jurisdiction of this Court.

195. In order to determine the full extent of such damages, including such profits as may be recoverable, plaintiff Temple will require an accounting from each Defendant of all monies generated from their unauthorized and unlawful use, marketing, promotion, advertisement, distribution, sale of goods and/or services including, without limitation, the Conversion Dharma Health classes as well as the first, second and third volumes of the "Peace & Health" periodical by improperly utilizing plaintiff Temple's mark.

196. In addition and as Defendants committed such wrongful acts as alleged herein with knowledge and/or in bad-faith, plaintiff Temple is also entitled to treble damages pursuant to New York's General Business Law § 360-m.

197. Furthermore and in that same regard, plaintiff Temple is also entitled to attorneys' fees and costs pursuant to New York's General Business Law § 360-m.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

198. Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

199. "Guang Huan Mi Zong" and/or "GHMZ" are common law trademarks and/or service marks entitled to protection from infringement by Defendants.

200.   Specifically, "Guang Huan Mi Zong" and/or "GHMZ" are inherently distinctive and refer to the sect of Buddhism founded by plaintiff Master in the 1970s.

201.   In the alternative, "Guang Huan Mi Zong" and/or "GHMZ" have acquired secondary meaning because the public has come to associate "Guang Huan Mi Zong" and/or "GHMZ" with the sect of Buddhism founded by plaintiff Master.

202.   In that regard, plaintiff Master has utilized "Guang Huan Mi Zong" and/or "GHMZ" to identify the source and/or origin of his goods and/or services including, without limitation, GHMZ's religious teachings and practices.

203.   In addition, the primary significance of "Guang Huan Mi Zong" and/or "GHMZ" to the public is as an indicator of the source or origin of plaintiff Master's religious teachings and practices.

204.   Similarly, "Master Ziguang Shang Shi" and/or "Holy Ziguang Shang Shi" are inherently distinctive and refer to plaintiff Master, the founder of GHMZ.

205.   In the alternative, "Master Ziguang Shang Shi" and/or "Holy Ziguang Shang Shi" have acquired secondary meaning because the public has to come to associate these terms with plaintiff Master, the founder of GHMZ.

206.   Furthermore, the GHMZ Logo is inherently distinctive and refers to plaintiff Temple.

207.   In the alternative, the GHMZ Logo has acquired secondary meaning because the public has come to associate these terms with plaintiff Temple.

208.   By virtue of its marketing and preaching, together with member acceptance and recognition of plaintiff Master and/or plaintiff Temple's religious teachings and practices, plaintiff Master's marks, "Guang Huan Mi Zong", "GHMZ," "Master Ziguang Shang Shi", "Holy Ziguang Shang Shi" and the GHMZ Logo, identifies their religious teachings and practices and distinguishes them from goods and/or services provided by other religious sects.

209.   Plaintiff Master and/or plaintiff Temple's marks have thus become and are valuable and unique assets symbolizing plaintiff Master and/or plaintiff Temple and their religious teachings and/or practices.

210.   Defendants utilized plaintiff Master and plaintiff Temple's trademarks and/or service marks in interstate commerce on at least five (5) separate occasions namely by publishing the first, second and third volumes of the "Peace & Health" periodical and publishing the April 21, 2007 advertisement in the World Journal and distributing promotional pamphlets on or about May 2008 offering Conversion Dharma Heath classes to the public.

211.   At no time did plaintiff Master and/or plaintiff Temple consent or authorize Defendants to utilize his trademarks and/or service marks.

212.   By engaging in the foregoing and without authorization from plaintiff Master and/or plaintiff Temple, Defendants' acts and conduct are likely to deceive or confuse the purchasing public, and raise funds and trade upon GHMZ, plaintiff Master and/or plaintiff Temple's reputation, both as to the source, origin, sponsorship, and approval of the services provided and as to the affiliation, connection or association of Defendants with plaintiff Master and/or plaintiff Temple.

213.   Upon information and belief, the aforementioned actions and conduct of the Defendants were intentional, deliberate, willful and/or wanton.

214.   Furthermore, Defendants utilized plaintiff Master and/or plaintiff Temple's marks with the specific intent of capitalizing on plaintiff Master and/or plaintiff Temple's reputation and good-will.

215.   Such actions and conduct were intended to cause confusion, have caused confusion, and will continue to cause confusion and cause irreparable harm for which there is no adequate remedy at law unless enjoined.  Accordingly, plaintiff Master and/or plaintiff Temple seeks and requests preliminary and permanent injunctive relief.

216.   Plaintiff Master and/or plaintiff Temple is informed and believes, and upon that basis alleges, that Defendants have, individually and jointly, obtained gains, profits and advantages as a result of their wrongful acts in amounts not thus far determined but within the jurisdiction of this Court.

217.   In order to determine the full extent of such damages, including such profits as may be recoverable, plaintiff Master will require an accounting from each Defendant of all monies generated from their unauthorized and unlawful use, marketing, promotion, advertisement, distribution, sale of goods and/or services including, without limitation, the Conversion Dharma Health classes as well as the first, second and third volumes of the "Peace & Health" periodical by improperly utilizing plaintiff Master and/or plaintiff Temple's trademarks and/or service marks.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Common Law Unfair Competition – Misappropriation)

218.   Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

219.   The public associates the marks, "Guang Huan Mi Zong," "Master Ziguang Shang Shi" and "Holy Ziguang Shang Shi," with plaintiff Master, GHMZ, plaintiff Master's religious teachings and practices and the goodwill associated with the same.

220.   In addition, the public further associates the mark of the GHMZ Logo with plaintiff Temple, GHMZ, plaintiff Temple's religious teachings and practices and the goodwill associated with the same.

221.   By utilizing plaintiff Master and/or plaintiff Temple's marks on at least five separate occasions namely in the first, second and third volumes of "Peace & Health" periodical, in the April 21, 2007 advertisement and the May 2008 promotional pamphlets, without plaintiff Master and/or plaintiff Temple's consent or authorization, Defendants have misappropriated plaintiff Master and/or plaintiff Temple's property rights or commercial advantage with respect to those marks.

222.   Defendants' acts have caused irreparable harm for which there is no adequate remedy at law.   Accordingly, plaintiff Master and/or plaintiff Temple seeks and requests preliminary and permanent injunctive relief.

223.   Plaintiff Master and/or plaintiff Temple is informed and believes, and upon that basis alleges, that Defendants have, individually and jointly, obtained gains, profits and advantages as a result of their wrongful acts such as fund raising and holding health class in amounts not thus far determined but within the jurisdiction of this Court.

224.   In order to determine the full extent of such damages, including such profits as may be recoverable, plaintiff Master and/or plaintiff Temple will require an accounting from each Defendant of all monies generated from their unauthorized and unlawful use, marketing, promotion, advertisement, distribution, sale of goods and/or services including, without limitation, the Conversion Dharma Health Classes by improperly utilizing plaintiff Master and/or plaintiff Temple's marks.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Common Law Unfair Competition – Palming Off)

225.   Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

226.   Without plaintiff Master and/or plaintiff Temple's permission and/or authorization, Defendants utilized plaintiff Master's actual photograph and marks "Guang Huan Mi Zong," "GHMZ" "Master Ziguang Shang Shi" and "Holy Ziguang Shang Shi" as well as plaintiff Temple's mark of the GHMZ Logo on at least five separate occasions namely in the first, second and third volumes of the "Peace & Health" periodical, the April 21, 2007 World Journal advertisement and the May 2008 promotional pamphlets.

227.   By engaging in the foregoing and without authorization from plaintiff Master and/or plaintiff Temple, Defendants' acts and conduct are likely to deceive or confuse the purchasing public and trade upon plaintiff Master and/or plaintiff Temple's ' reputation, both as to the source, origin, sponsorship, and approval of the services provided and as to the affiliation, connection or association of Defendants with plaintiff Master and/or plaintiff Temple and constitute acts of palming off pursuant to New York common law.

228.   The aforementioned actions and conduct of the Defendants were negligent.

229.   In the alternative and upon information and belief, the aforementioned actions and conduct of the Defendants were intentional, deliberate, willful and/or wanton.

230.   Defendants' negligent, intentional, deliberate, willful and/or wanton acts have caused and will continue to cause serious damage to plaintiff Master and/or plaintiff Temple in an amount to be determined by the trier.

231.   Such actions and conduct were intended to cause confusion, have caused confusion, and will continue to cause confusion and cause irreparable harm for which there is no

adequate remedy at law unless enjoined. Accordingly, plaintiff Master and/or plaintiff Temple seeks and requests preliminary and permanent injunctive relief.

232.    Plaintiff Master and plaintiff Temple are informed and believe, and upon that basis allege, that Defendants have, individually and jointly, obtained gains, profits and advantages as a result of their wrongful acts including the fund raising in amounts not thus far determined but within the jurisdiction of this Court.

233.    In order to determine the full extent of such damages, including such profits as may be recoverable, plaintiff Master and/or plaintiff Temple will require an accounting from each Defendant of all monies generated from their unauthorized and unlawful use, marketing, promotion, advertisement, distribution, fund raising, sale of the Dharma Convention Health classes as well as the first, second and third volumes of the "Peace & Health" periodical by improperly utilizing plaintiff Master and/or plaintiff Temple's marks and an actual photograph of plaintiff Master.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Conversion)

234.    Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

235.    Plaintiffs Association, Temple and/or Master were the rightful owners of monies in the amount of One Hundred and Eight Thousand Two Hundred Dollars and Six Cents ($108,200.06) as follows:

A. The amount of Three Thousand Nine Hundred and Seventy Four Dollars ($3,974.00), which is attributable to the monies generated by the Health Classes taught by Defendant Zou on behalf of plaintiff Temple from September 23, 2005 to April 30, 2006 as well as from December 26 to December 28, 2005.

B. The amount of Eight Thousand Two Hundred and Thirteen Dollars and Thirty Four Cents ($8,213.34), which is attributable to the monies generated by the Health Classes taught by Defendant Zou on behalf of plaintiff Association from January 2, 2007 to April 26, 2007;

C. Donations in the approximate amount of Six Thousand Two Hundred Ninety Three Dollars and Sixty Cents ($6,293.60), which were solicited on behalf of plaintiff Association during the time period of September 27, 2007 to June 6, 2008. (Plaintiff Master announced in the Press Conference on June 2, 2008 that all the income donated to for the earthquake relief in Sichuan. The charity was broadcasted by the newspaper and TV in Toronto and supported by over 300 attendees in the Convention);

D. The approximate sum of Sixty Seven Thousand Four Hundred and Nine Dollars and Fifty Five Cents ($67,409.55), which represents proceeds generated from the

admission tickets with respect to the June 2008 Dharma Convention sponsored in part by plaintiffs Association and Master;

E.  Proceeds generated from the Health Classes during the June 2008 Convention in the amount of Twelve Thousand Three Hundred and Nine Dollars and Fifty Seven Cents ($12,309.57); and,

F.  Other donations solicited by Defendants on behalf of plaintiffs Association, Temple and/or Master in an amount not less than Ten Thousand Dollars ($10,000.00).

236.  Despite the following, Defendants have failed to remit any of the aforementioned monies to plaintiffs Association, Temple and/or Master.

237.  By failing to remit these monies to plaintiffs Association, Temple and/or Master, Defendants have exercised unauthorized dominion and control over the same to the exclusion of plaintiffs Association, Temple and/or Master.

238.  As a direct and proximate result, plaintiffs Association, Temple and/or Master have been damaged in an amount not less than $108,200.06.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Defamation)

239.  Plaintiffs repeat, reiterate and reallege each and every allegation with the same force and effect as if fully set forth at length herein.

240.  As set forth above, Defendant Zou made false and defamatory statements concerning plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng.

241.  Defendant Zou published these statements to third parties without privilege or authorization.

242.  Defendant Zou's publication of these defamatory statements was intentional and willful.

243.  Furthermore, defendant Zou's statements concerning plaintiffs Wong, Tan and Lo namely that they were "fake nuns," "frauds" and/or "fakes," were defamatory per se because they are injurious to plaintiffs Wong, Tan and Lo in their business, trade or profession as preachers and/or nuns of GHMZ.

244.  Furthermore, defendant Zou's statements concerning plaintiff Wong that she misappropriated monies in the amount of $100,000.00 from GHMZ is defamatory per se because they are injurious to plaintiff Wong in her business, trade or profession as a preacher of GHMZ.

245.  In addition, defendant Zou's statements concerning plaintiff Wong are further defamatory per se they accuse plaintiff of committing a serious crime.

246.  Likewise, defendant Zou's statement concerning plaintiff Chan, namely that she is a homosexual, is defamatory per se because they are injurious to plaintiff Chan in her business, trade or profession as a preacher of GHMZ.

247.  In addition, defendant Zou's statements concerning plaintiff Chan is also defamatory per se by referring to plaintiff Chan as a homosexual.

248.   Furthermore, defendant Zou's statements concerning plaintiffs Mak and Cheng namely that they were "crazy" were defamatory per se because they are injurious to plaintiffs Mak and Cheng in their business, trade or profession as preachers and/or nuns of GHMZ.

249.   Furthermore, defendant Zou's statements made about plaintiff Master, namely that he is a "fake one" and a "deceiver" and "the real one would be coming soon."

250.   These statements are defamatory per se because they are injurious to his business, trade or profession as the founder and religious leader of GHMZ.

251.   Furthermore, defendant Zou's statements that GHMZ is a "religious scam" is defamatory per se because they are injurious to plaintiff Association in its business, trade or profession.

252.   In addition, defendant Zou's statements about plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng are injurious to their reputations and designed with the intent to place them in a false light within the community at large and subject them to public scorn and ridicule.

253.   Defendant Zou's statements were intended to cause others to lose confidence in plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng.

254.   Defendant Zou's statements were intentionally, willfully, recklessly and/or negligently made with knowledge of their falsity and/or with serious doubt as to their truth.

255.   In the alternative and with respect to the statements made about plaintiffs Master and Association, defendant Zou's statements were made with actual malice either with knowledge of their falsity or reckless disregard for the truth.

256.   As a direct and proximate result of defendant Zou's actions and the consequences proximately caused by her, plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng's reputations and standing within the GHMZ community, as well as the overall Buddhist community, have been and/or continues to be irreparably damaged.

257.   Defendant Zou's improper acts caused and will continue to cause irreparably harm to plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng for which there is no adequate remedy at law.

258.   Monetary relief alone is not adequate to address fully the irreparable injury that defendant Zou's improper actions have caused and will continue to cause plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng if not enjoined.

259.   Accordingly, plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng seek and request preliminary and permanent injunctive relief.

260.   Specifically, plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng request the Court issue a preliminary and permanent injunction precluding defendant Zou, her agents, servants, employees, representatives, attorneys, successors, and assigns, and all other persons, firms or corporations acting in concert, privity or participation with from publishing defamatory and false statements concerning plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng.

261.   Alternatively and as a direct and proximate result of defendant Zou's improper acts, plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng are entitled to damages, and will be proven with more specificity at the time of trial.

262.   Moreover, defendant Zou's conduct has been so outrageous as to offend all common bounds of decency and the standards of the community in which the parties reside.

263.   The harm suffered by plaintiffs Master, plaintiff Association, Wong, Tan, Mak, Chan, Lo, and Cheng was the direct and proximate result of the defendant Zou's actions and such actions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those actions.

264.   As defendant Zou's publication of defamatory statements concerning Plaintiffs was intentional and/or willful, plaintiffs are entitled to punitive damages.

**WHEREFORE**, plaintiffs, WESTERN SUPREME BUDDHA ASSOCIATION, INC., PLAINTIFF ASSOCIATION BUDDHA TEMPLE A/K/A WESTERN SUPREME BUDDHA TEMPLE, INC., LUCAS Z. WANG A/K/A MASTER ZIGUANG SHANG SHI A/K/A HOLY ZIGUANG SHANG SHI, CHUN YEE WONG A/K/A JENNIE WONG, HSIAOPEI TAN A/K/A BETTY TAN, MIALANA MAK, SUET LEE CHAN A/K/A NAKIE CHAN, YIN YEE LO A/K/A DEVI LO, and YIK CHENG A/K/A AEOLIAN CHENG, hereby demand Judgment against defendants, OASIS WORLD PEACE AND HEALTH FOUNDATION, OASIS CAPITALS, INC., CHANGLIN QIN A/K/A CHARLES QIN, MIN ZOU A/K/A HELEN ZOU and LAN WU, A/K/A HELENA WU jointly and severally, as follows:

1.   AS TO THE FIRST, SECOND, FOURTH FIFTH and SIXTH CAUSES OF ACTION, a preliminary and permanent injunction precluding Defendants from utilizing in any capacity plaintiff Master's marks, "Guang Huan Mi Zong", "GHMZ", "Master Ziguang Shang Shi" and "Holy Ziguang Shang Shi", plaintiff Master's name and/or photographs, pictures, images and other depictions of plaintiff Master for commercial purposes including, without limitation, advertisements for purposes of offering health classes, soliciting donations and/or publications of the "Peace & Health" periodical or other similar periodical;

2.   ALTERNATIVELY, AS TO THE FIRST, SECOND, FOURTH, FIFTH and SIXTH CAUSES OF ACTION, monetary damages, the exact amount will be proven with specificity at the time of trial;

3.   AS TO THE SECOND CAUSE OF ACTION, a preliminary and permanent injunction precluding Defendants from utilizing in any capacity plaintiffs Wong and Tan's names and/or photographs, pictures, images and other depictions of plaintiffs Wong and Tan for commercial purposes including, without limitation, advertisements for purposes of offering health classes and/or soliciting donations.

4.   AS TO THE THIRD CAUSE OF ACTION, a preliminary and permanent injunction precluding Defendants from utilizing in any capacity plaintiff Temple's mark of, GHMZ Logo, for commercial purposes including, without limitation, advertisements for

purposes of offering health classes, soliciting donations and/or publications of the "Peace & Health" periodical or other similar periodical;

5.    ALTERNATIVELY AS TO THE THIRD CAUSE OF ACTION, monetary damages, the exact amount will be proven with specificity at the time of trial;

6.    AS TO THE SEVENTH CAUSE OF ACTION, damages in an amount not less than $108,200.06;

7.    AS TO THE SECOND AND SEVENTH CAUSES OF ACTION, an award of punitive damages;

8.    AS TO THE EIGHTH  CAUSE OF ACTION, preliminary and permanent injunction precluding defendant Zou, her company, agents, servants, employees, representatives, attorneys, successors, and assigns, and all other persons, firms or corporations acting in concert, privity or participation with from publishing defamatory and false statements concerning plaintiffs;

9.    ALTERNATIVELY AS TO THE EIGHTH CAUSE OF ACTION, damages to GHMZ and the plaintiff Temple, the exact amount is over $3,500,000, and will be proven with more specificity at the time of trial;

10.    AS TO THE THIRD CAUSE OF ACTION, attorneys' fees and costs,

11.    AS TO THE THIRD CAUSE OF ACTION, treble damages; and,

12.    Such other, further and different relief as to the Court seems just, equitable and proper under the circumstances.


Dated: December, 2008


All the Plaintiffs

Western Supreme Buddha Association Inc.

Western Supreme Buddha Temple Inc.

Lucas Z. Wang

Chun Yee J. Wong

Suet Lee Chan

Hsiaopei Tan

Yin Yee Lo

Yik Cheng

Mialana Mak